FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
8/14/2024 5:10 PM
KATHLEEN VIGIL CLERK OF THE COURT
Latisha B Garcia Trujillo

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

MIQUELLA BENAVIDEZ and
NATALIE BENAVIDEZ,

    Plaintiffs,

v.                                       Case No. D-101-CV-2024-01954
                                       Case assigned to Ellenwood, Kathleen McGarry

THE BIPLANE COMPANY,

    Defendant.

## COMPLAINT FOR DAMAGES

Plaintiffs Miquella Benavidez and Natalie Benavidez (herein after collectively referred to as "Plaintiffs") by and through their attorneys of record, Egolf + Ferlic + Martinez + Harwood, LLC, Brian Egolf and Katherine Murray appearing, and for their Complaint for Damages, state as follows:

### INTRODUCTION

1. Plaintiffs are long time New Mexico residents, who live or lived on their properties located on Agua De Oro, in a rural neighborhood southwest of the City of Santa Fe near the historic community of La Cienega.

2. On July 18, 2023, Plaintiffs' lives forever changed when an airplane crashed into Miquella Benavidez' family home, completely destroying her home and everything inside it, which included virtually everything her family owned.

3. The airplane crash and subsequent fire destroyed their family home, vehicle, and all of their personal belongings at the premises.

4. The pilot, Randolph Sherman, did not survive the crash.

5. As a result of the crash, fuel and other contaminants from the aircraft were released into the air and onto the land upon which Miquella's home was built.

6. The fire resulted in noxious, toxic fumes invading the adjacent property belonging to Natalie Benavidez, Miquella's mother.

7. Plaintiff Miquella Benavidez experienced catastrophic personal and property damage, and significant economic losses caused by the crash.

8. Defendant is co-owner of the aircraft and is liable for all damages to Plaintiffs caused by the crash.

9. The crash contaminated the land and diminished the value of Plaintiffs' land.

10. The crash prevented Plaintiff Miquella Benavidez from using her property and resulted in the total destruction of her home, vehicle and all personal belongings.

11. Plaintiff Miquella Benavidez and her family were forced to immediately locate alternate housing, and replace their household items, furniture, clothing, and personal items, at great expense of money, time and labor.

12. The crash and subsequent release of smoke and contaminants into the air and land, interfered with Plaintiffs' use and enjoyment of their property.

13. The crash, and subsequent loss of property and interference with the use and enjoyment of their property, caused Plaintiffs significant annoyance, disturbance and anxiety.

14. The claims herein are brought against Defendant for money damages as compensation for damages caused by the negligent and wrongful acts and omissions of Defendant and its agents, including Randolph Sherman.

## JURISDICTION AND VENUE

15. All the events giving rise to the claims alleged herein occurred in Santa Fe County.

16. This Court has jurisdiction over this action.

17. Venue is proper.

## THE PARTIES

18. Plaintiff Miquella Benavidez is a resident of Santa Fe County.

19. Plaintiff Natalie Benavidez is a resident of Santa Fe County.

20. Defendant Biplane Company is the owner of the aircraft that crashed into Plaintiff Miquella Benavidez' home on July 18, 2023.

21. The Biplane Company is a foreign corporation with its principal place of business in Los Angeles, California.

22. Defendant Biplane Company is liable for all damages suffered by Plaintiffs as a direct and proximate cause of the airplane crash, including, but not limited to, the negligent and wrongful acts and omissions of Defendant and its agents, and any malfunctioning of the aircraft.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

23. On July 18, 2023, at around 9 o'clock in the morning, Randolph Sherman ("Sherman") was preparing for take-off at Santa Fe Regional Airport in New Mexico.

24. At all relevant times, Sherman was acting as an agent of Defendant.

25. Sherman was preparing to fly a twin-engine 1978 Cessna T310R, Tail Number N5251C. to Santa Monica, California.

26. Defendant is co-owner of N5251C.

27. At about 9:04 a.m., winds were calm, and Sherman was cleared for take-off from runway 20 and climbed to an altitude of about 6,100 feet mean sea level (msl) and attained about 108 knots groundspeed.

28. About 1 minute and 23 seconds later, Sherman reported an engine failure.

29. The controller at Santa Fe Regional Airport asked Sherman to repeat, and he again reported that he had an engine failure.

30. The controller cleared Sherman for a left turn to runway 33, and shortly after, cleared him to land on any runway.

31. Sherman responded that he needed to gain altitude.

32. The airplane turned south and maintained about 6,100 ft msl, and 100 knots.

33. The controller confirmed yet again that only one engine was operational.

34. After this final confirmation, no further communication was received from Sherman.

35. The last ADS-B data point, recorded at 9:03 a.m., captured the airplane at an altitude of about 5,875 ft msl, and a groundspeed of 86 knots, about 241 feet west of the accident site.

36. Multiple witnesses reported seeing the airplane maneuvering at a low altitude.

37. One witness reported that the airplane was flying directly toward the National Guard Armory headquarters building, but the plane turned left, eastward and descended in a wings level, and slight nose up attitude before it plummeted, striking the south end of

Miquella Benavidez's home before it came to rest on the east side of her home, at approximately 9:06 a.m.

38. The airplane contained 60 gallons of fuel and upon striking Miquella's home, fuel was released upon impact, causing an explosive ignition of the fuel.

39. The first point of impact was the southwest side of Miquella's home and the debris path extended about 40 feet to the main wreckage, which was located on the eastern side of the home.

40. A post-impact fire consumed most of the wreckage of the aircraft, and engulfed Miquella's home and vehicle in flames.

41. Miquella's home, her vehicle and all of her and her family's possessions and personal belongings within the home were destroyed in the fire.

42. Miquella's property is not habitable.

43. Miquella's property remains contaminated from the crash.

44. The post-impact fire caused smoke and toxic fumes to travel to the adjacent property owned by Miquella's mother, Natalie Benavidez.

45. The release of contaminants into the air and land has diminished the property value of Plaintiffs' properties.

46. This accident caused Miquella Benavidez to suffer catastrophic property damage, and significant annoyance, disturbance, and economic losses.

47. Suddenly losing their home required immediate relocation of Miquella's family to temporary, emergency housing.

48. The complete destruction of their home and personal possessions caused Miquella and her family to suffer economic losses, and disturbance and annoyance damages from the interference with and loss of the use and enjoyment of their property.

49. In addition to the loss of their home and material possessions, Miquella and her family lost important documents and family heirlooms and keepsakes.

50. Many of these personal items can never be replaced.

51. Defendant is liable for the negligent and wrongful acts and omissions of its agents, including but not limited to Sherman, and any malfunctions of its aircraft that were direct and proximate causes of the crash.

52. Defendant is liable for all damages suffered by Plaintiffs, directly and proximately caused by the crash of Defendant's aircraft.

53. Defendant is directly liable for its own negligent acts, as well as the negligent acts of is officers, agents, and co-owners and is vicariously liable for the negligent acts of their employees, representatives, consultants, co-owners, agents, and/or servants and those whom they controlled or had the right and power to control.

54. At all times relevant to this complaint and on information and belief, the Defendant and Randolph Sherman were engaged in a joint venture/enterprise during Mr. Sherman's operation and co-ownership of N5251C. Each had a shared community of interest in the object and purpose of undertaking for which N5251C was being operated and used.

55. Defendant and Randolph Sherman had an equal right to share in the control, management, and operation of N5251C at all times relevant to this complaint.

56. The Defendant and Randolph Sherman operated as a joint venture/enterprise for the purpose of operating N5251C.

57. Because Defendant and Randolph Sherman were engaged in a joint venture/enterprise at all times relevant to this complaint, the acts and omissions of each participant in the joint venture/enterprise are imputable to all other participants. The actions of each participant and each participant's servants, agents, and employees as set forth herein, are imputed to each participant, jointly and severally.

58. In addition to their direct liability, the Defendant and Randolph Sherman are vicariously liable for all negligent or intentional acts or omissions committed by their agents, physicians, nurses, employees, officers, directors, apparent agents, or contractors, pursuant to the doctrines of agency, apparent agency, and respondeat superior.

**FIRST CLAIM FOR RELIEF – NEGLIGENCE**

59. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth herein.

60. The aircraft that crashed into Miquella Benavidez's home is a type and class of aircraft that can be safely landed in the event of complete or partial engine failure.

61. Persons licensed to fly such aircraft are trained on how to safely land the aircraft in the event of complete or partial engine failure.

62. Turning the aircraft, shortly after losing power in one of the aircraft's engines was clear pilot error.

63. At the time of the crash, Sherman lacked the skills or ability to safely land the aircraft in emergency conditions.

64. At the time of the crash, Defendant knew or should have known that Sherman lacked the skills or ability to safely land the aircraft in emergency conditions.

7

65. Upon information or belief, Sherman suffered from an unknown or undisclosed health condition that interfered with his ability to safely land the aircraft in emergency conditions.

66. Defendant had a duty to oversee, manage, and maintain the aircraft so that it could be operated safely.

67. Upon information or belief, Defendant failed to properly maintain, manage, and oversee the aircraft.

68. Defendant had a duty to entrust its aircraft to a pilot that possessed the requisite skill, knowledge, and training to operate the aircraft safely and to land it safely in the event of an engine failure.

69. Defendant negligently entrusted the aircraft to Sherman.

70. Defendant breached its duty of reasonable care, and it was foreseeable that its breach would cause injury to Plaintiffs.

71. Defendant's acts and omissions created conditions that harmed Plaintiffs.

72. Defendant and its agents directly, foreseeably, and proximately caused injury to Plaintiffs in various ways, including, but not limited to, the destruction of the family home and personal belongings of Plaintiff Miquella Benavidez and her children, injury to Plaintiffs' ability to use their property, the destruction of Plaintiffs' enjoyment of their property, the imposition on the Plaintiffs of annoyance, disturbance, and distress, and as otherwise described herein in an amount to be determined at trial.

73. Defendant's negligent acts and omissions directly, foreseeably, and proximately caused, and continue to cause, injury to Plaintiffs in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF - TRESPASS

74. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth herein.

75. Plaintiffs own or have other legal property rights and interests in and to the land affected by the airplane crash.

76. The airplane that crashed into Plaintiff Miquella Benavidez' home, entered her property and destroyed her home and personal belongings.

77. The crash released contaminants in the air, which invaded Plaintiff Natalie Benavidez's property.

78. The crash released contaminants into the land, which invaded Plaintiff Miquella Benavidez's property.

79. Contaminants released during the crash remain in the land belonging to Plaintiff Miquella Benavidez.

80. Miquella is unable to rebuild her family home until the trespass is ended and the damage caused thereby is fully remedied.

81. Defendant and its agents were at all relevant times required to abstain from unlawfully intruding or invading upon the property rights of Plaintiffs.

82. By causing or otherwise contributing to the airplane crash, Defendant invaded and intruded upon the property rights of Plaintiffs without permission.

83. This invasion by Defendant and its agents directly, foreseeably, and proximately caused injury to Plaintiffs' property rights in various ways including but not limited to the destruction of the family home and personal belongings of Plaintiff Miquella Benavidez and her children, injury to Plaintiffs' ability to use their property, the destruction of

Plaintiffs' enjoyment of their property, and as otherwise described herein in an amount to be determined at trial.

84. The acts and omissions of Defendant and its agents created conditions that harmed Plaintiffs.

85. Plaintiffs are entitled to recover damages from Defendant and to entry of an order compelling Defendants to abate the trespass.

## THIRD CLAIM FOR RELIEF - PRIVATE NUISANCE

86. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth herein.

87. Because Plaintiffs possess land adjacent to and upon which the airplane crashed, Plaintiffs own or have other legal property rights and interests in and on the land affected by the crash.

88. The physical intrusion on Plaintiffs' property by the airplane and post-impact release of smoke, toxic fumes and other contaminants invaded Plaintiffs' use and enjoyment of their land and reduced the value of their property.

89. This physical intrusion is unwanted and injurious to Plaintiffs.

90. This physical intrusion has diminished the value of Plaintiffs' properties.

91. The acts and omissions of Defendant and its agents, leading up to and in connection with the airplane crash, substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their land and property, and required Plaintiff Miquella Benavidez to immediately obtain alternate housing and replace her family's household and personal items, causing her significant economic losses.

92. The crash substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their land and property.

93. The crash caused Plaintiffs distress and anxiety from the total destruction of the home and personal property of Plaintiff Miquella Benavidez and her children, and contamination of their land.

94. The crash also substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their land and property by disturbing Plaintiffs' comfort, convenience and peace of mind in regard to their property, by diminishing the value of Plaintiffs' properties, and by destroying Plaintiff Miquella Benavidez ability to use her property, causing her severe annoyance and disturbance.

95. The impact of the plane crash continues to interfere with Plaintiffs' use and enjoyment of their property in considerable ways.

96. Plaintiff Miquella Benavidez and her family continue to suffer anxiety, annoyance and disturbance over the destruction of their property, and continued contamination of their land.

97. The acts and omissions of Defendant and its agents created conditions that harmed Plaintiffs.

98. The acts and omissions of Defendant and its agents in invading Plaintiffs' property, and refusing to abate the damage caused thereby, are unreasonable.

99. The unlawful interference with Plaintiffs' property by Defendant directly, foreseeably, and proximately caused and continues to cause injury to Plaintiffs' property and other legal interests in an amount to be determined at trial.

100.     Plaintiffs are entitled to recover damages from Defendant and entry of an order compelling Defendant to abate the nuisance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order and judgment:

1) Against Defendant for compensatory and consequential damages for injuries directly and proximately caused by Defendants and its agents, as described herein, in an amount to be determined at trial;

2) Ordering Defendant to abate the nuisance and cure the trespass on Plaintiffs' property;

3) Declaring that Defendant is liable for all costs incurred and costs that may be incurred by Plaintiffs to abate the nuisance and cure the trespass within Plaintiffs' property;

4) Against Defendant for pre-judgment and post-judgement interest and punitive damages, to the extent not prohibited by law; and,

5) Against Defendant, for attorneys' fees, costs, and expenses, and such other and further relief as the Court may deem just and equitable.

Respectfully Submitted,

EGOLF + FERLIC +
MARTINEZ + HARWOOD, LLC
/s/ Brian Egolf
Brian Egolf
Katherine Murray
123 W. San Francisco St., Second Floor
Santa Fe, NM 87501
(505) 986-9641
Brian@EgolfLaw.com
Murray@egolflaw.com
*Attorneys for Plaintiffs*